UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ROBERT RAIA,

                               Plaintiff,        **MEMORANDUM AND ORDER**
                                                                    04-CV-3535 (DRH) (MLO)
          - against -

ILLINOIS TOOL WORKS INC., D/B/A
HOBART CORPORATION,

                               Defendant.
----------------------------------------------------------X
**A P P E A R A N C E S :**

**FRANK & ASSOCIATES, P.C.**
Attorneys for Plaintiff
500 Bi-Country Boulevard
Suite 112N
Farmingdale, New York 11735
By: Charles A. Martin, Esq.

**GROTTA, GLASSMAN & HOFFMAN, P.C.**
Attorneys for Defendant
532 Broadhollow Road
Suite 142
Melville, New York 11747
By: Jed L. Marcus, Esq.
    Keith Reinfeld, Esq.

**HURLEY, District Judge:**

        Plaintiff Robert Raia ("Plaintiff") filed the present Title VII and New York State Human Rights Law ("NYSHRL") action against his former employer, Illinois Tool Works Inc., d/b/a Hobart Corporation ("Defendant"), claiming that he was retaliated against for opposing alleged discriminatory actions taken by Defendant against a former employee. Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, Defendant's motion is denied.

## BACKGROUND

The material facts, drawn from the Complaint and the parties' Local 56.1 Statements, are undisputed unless otherwise noted. Plaintiff began working for Defendant in 1989 as a field service technician. His job was to fix and repair commercial restaurant equipment. Plaintiff reported to Paul Todoro ("Todoro"), the branch manager, who in turn reports to Don Stairs ("Stairs"), Defendant's Region Manager for Service.

Plaintiff alleges that Todor and Stairs retaliated against him for opposing alleged discriminatory actions taken by Defendant against former employee Anthony Garnier ("Garnier"), who is of Haitian descent. Garnier filed a complaint of discrimination with the New York State Department of Human Rights in January 2002 and a lawsuit against Defendant in January 2004.

Plaintiff alleges that he was subjected to a hostile work environment after he complained about Defendant's treatment of Garnier. Specifically, he claims that he was threatened with termination if he called the main office with his complaints, denied proper safety equipment, constantly berated and threatened, and sent to dangerous work locations. Plaintiff resigned from his job on April 8, 2005.

Plaintiff filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC") on May 22, 2004. Thereafter, Plaintiff's claims were dismissed and Plaintiff was granted a Notice of Right to Sue. Plaintiff commenced the instant action on August 17, 2004. He filed an Amended Complaint on January 31, 2005. His Amended Complaint asserts two causes of action, one for retaliation under Title VII and one for retaliation under the

NYSHRL.[1]

Presently before the Court is Defendant's motion for summary judgment. For the reasons stated below, Defendant's motion is denied

**DISCUSSION**

*I.  Applicable Law and Legal Standards*

*A.    Summary Judgment*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth

---

[1] Although Plaintiff's opposition papers contained a cross-motion for leave to add a claim of constructive discharge, Plaintiff has since expressly withdrawn such application. (*See* Pl.'s Apr. 13, 2006 letter, docket entry no. 40.)

specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *Gelb v. Board of Elections of the City of New York*, 224 F.3d 149, 157

(2d. Cir. 2000), and should thus be granted with caution in employment discrimination cases. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994).

### B.      *The McDonnell-Douglas Burden-Shifting Methodology*

In *McDonnell-Douglas Corporation v. Green*, 411 U.S. 792, 802-804 (1973), the Supreme Court first enunciated the now-familiar "burden-shifting" formula used in analyzing Title VII employment discrimination claims based on indirect or circumstantial evidence. This standard was further refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981) and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-511 (1993).

Under *McDonnell-Douglas* and its innumerable progeny, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the *McDonnell-Douglas* framework and its presumptions and burdens disappears, leaving the sole remaining issue of "discrimination vel non," and thus (3) the burden shifts back to the plaintiff to prove that the employer's stated reason is merely pretextual and that discrimination was an actual reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

The burden of establishing a prima facie case of employment discrimination has

been described as "modest," *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994), or even "minimal." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). It is a burden of production, not persuasion, and involves no credibility assessments. *Reeves*, 530 U.S. at 143.

Likewise, the employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle. It is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory. *See Seils v. Rochester City Sch. Dist.*, 192 F. Supp.2d 100, 111 (W.D.N.Y. 2002) (citing, *inter alia*, *Meiri*, 759 F.2d at 995 (2d Cir. 1985)), *aff'd*, 99 Fed. Appx. 350 (2d Cir. 2004). Federal courts do not have a "roving commission to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n.8 (7th Cir. 1987)), and may not "sit as super personnel departments, assessing the merits — or even the rationality — of employers' non-discriminatory business decisions." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991). Thus, "[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).

In order to demonstrate that the employer's stated non-discriminatory reasons for the allegedly discriminatory action are pretextual, "[a] plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995). A

discrimination claimant may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Bombero v. Warner-Lambert Co.*, 142 F. Supp.2d 196, 203 n.7 (D. Conn. 2000) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999), and citing *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)), *aff'd*, 9 Fed. Appx. 38 (2d Cir. 2001).

However, to rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988). "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri*, 759 F.2d at 998.

## II.     *There are Genuine Issue of Material Fact as to Plaintiff's Retaliation Claims*

Defendant argues that Plaintiff's retaliation claims should be dismissed because Plaintiff cannot establish a prima facie case of retaliation. Title VII "forbids an employer to retaliate against an employee for, inter alia, complaining of employment discrimination prohibited by Title VII." *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-3(a)). Claims of retaliation pursuant to Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas*. *See Terry*

*v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003).[2]

"In order to present a prima facie case of retaliation under Title VII . . . , a plaintiff must adduce 'evidence sufficient to permit a rational trier of fact to find [1] that [ ] he engaged in protected participation or opposition under Title VII . . ., [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.'" *Id.* at 205-206 (quoting *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)). Once the employee has established a prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse action. If it does so, then the burden shifts back to the employee to demonstrate pretext. *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 94-95 (2d Cir. 2001).

Here, Defendant argues that Plaintiff cannot establish a prima facie case of retaliation because he cannot demonstrate the last three elements of his prima facie case, viz. that Defendant was aware that Plaintiff engaged in a protected activity, that Plaintiff suffered an adverse employment action, and that there was a linkage between the two. The Court will address Defendant's arguments in turn.

A. *Notice of Protected Activity*

Plaintiff alleges that he was retaliated against for complaining about Defendant's alleged discriminatory treatment of Garnier, a Haitian co-worker. Defendant argues that

---

[2] Retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII. *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006).

although Plaintiff voiced general complaints to Todoro and Stairs, a reasonable person could not have understood that Plaintiff was complaining of alleged discriminatory treatment because Plaintiff never specifically referenced Garnier or any alleged discrimination.

"Implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998). After reviewing the record, the Court agrees with Defendant that some of Plaintiff's alleged complaints merely described what Plaintiff perceived to be Defendant's unfair treatment of Garnier and did not specify that Plaintiff believed Garnier was being discriminated against because of his national origin. (*See, e.g.*, Pl.'s Dep. at 198, 228 (Plaintiff testified that in November 2001, he witnessed argument between Defendant's Parts Manager and Garnier; Parts Manager told Garnier to "[p]ut gloves on" so he wouldn't "catch any disease" and called Garnier a "swine"; Plaintiff told Todoro that "This ain't right. He can't say this to him" and "Are you going to let this go on? This isn't right.").) There is other evidence, however, from which a reasonable juror could find that Defendant was on notice that Plaintiff's opposition was directed at such unlawful discrimination.

Garnier filed a complaint of discrimination with the New York State Department of Human Rights in January 2002. It is undisputed that Plaintiff was aware of such filing and that he met with Garnier in February 2002, at which time Garnier asked Plaintiff to assist him with his claim. (*See* Def.'s Local 56.1 Stmt. ¶ 13; Pl's Dep. at 37.) Plaintiff testified at his deposition that in March 2002, he had a telephone conversation with Stairs during which he

stated: "Things aren't fair here. You know, he fired [Garnier] . . . I want to call the office." (Pl.'s Dep. at 246.) Plaintiff further testified that fifteen minutes later, he spoke with Stairs again and stated: "This guy [Garnier], his human rights were violated. They're going after me for retaliation. Don [Stairs], you've got to do something." (*Id.*) According to Plaintiff, Stairs screamed at him: "You ain't going to call the main office. That's not the way it happened. You want your job here. [Garnier's] gone. Forget [Garnier]. Get him out of your mind. He's gone and don't call me at this number again." (*Id.*)

Given the time sequence, viz. that Plaintiff complained so soon after Garnier's filing with the New York State Department of Human Rights, and the fact that Plaintiff, a layperson, complained that Garnier's "human rights" were being violated, a reasonable juror could conclude that Plaintiff's comments were sufficient to alert Defendant that unlawful discrimination was the nature of Plaintiff's objections. Accordingly, the Court finds that Plaintiff has satisfied the notice element of his prima facie case.[3]

### B.   *Adverse Action*

Defendant also argues that Plaintiff cannot establish a prima facie case of retaliation because he has not alleged a "'materially adverse change in the terms and conditions of his employment.'" (Def.'s Mem. at 3 (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).) The Court disagrees.

---

[3] It is undisputed that on April 25, 2004, Plaintiff sent a letter to Vicki Phillippi, Defendant's Director of Human Resources, wherein he expressly complained that Defendant had discriminated against Garnier based on his "race [and] national origin" and that Plaintiff had been attempting to relay as much to Defendant's management "for quite some time." (Def.'s Ex. 10.) However, because the Court was unable to glean from the record any adverse actions that postdated Plaintiff's letter, the Court declines to rely on it as satisfying the notice element of Plaintiff's prima facie case.

Subsequent to the parties' briefing on this motion, the Supreme Court altered the standard previously used by the Second Circuit in defining an adverse employment action in retaliation claims. Under that earlier standard, examples of adverse employment actions included only those which were deemed "materially adverse" alterations to the terms of employment, such as termination, demotion via a reduced wage, salary or job title, or a material loss of benefits. *See Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006). In <u>Burlington Northern and Santa Fe Ry. Co. v. White</u>, however, the Supreme Court held that "the anti-retaliation provision" of Title VII "is not limited to discriminatory actions that affect the terms and conditions of employment." --- U.S. ----, 126 S. Ct. 2405, 2412-13 (2006). Instead, the Court held that "actionable retaliation" was that which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (citations and internal quotation marks omitted); *id.* (noting that anti-retaliation provision prohibits "employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers") (citation and internal quotation marks omitted).

Here, Plaintiff claims that Defendant retaliated against him "by refusing to provide [him] with proper safety equipment, constantly berating him, threatening him on multiple occasions and sending him to dangerous work locations."[4] (Pl.'s Mem. at 7 (citing relevant portions of Plaintiff's deposition testimony); *see also id.* at 6-7 (citing other relevant portions of deposition testimony).) Plaintiff also claims that he received unwarranted

---

[4] In Plaintiff's memorandum of law, he asserts that Defendant's actions created a hostile work environment which constituted an adverse action for retaliation purposes. Although Plaintiff uses the term "hostile work environment," the Amended Complaint does not allege hostile work environment as a separate cause of action and Plaintiff has not moved to add such a new claim.

reprimands.

Defendant contends that Plaintiff "is truly the hypersensitive and idiosyncratic plaintiff" and that his "reality is completely distorted by his unjustified belief that [Defendant] and its employees are out to harm him." (Def.'s Mem. at 8.) In this regard, Defendant points out the undisputed fact that in 1999, Plaintiff was diagnosed with depression, panic disorder, and anxiety.[5] (Pl.'s Dep. at 118-19.) Defendant argues that because Plaintiff "had a long history of mental illness," he was easily manipulated by Garnier (Def.'s Local 56.1 Stmt. ¶ 8), and only complained "after a visit from or conversation with Garnier," (*id.* ¶ 13).

Defendant's arguments about Plaintiff's mental state raise issues of credibility which only a jury may resolve. This is especially true here given Defendant's slanted presentation of the evidence. For example, in an attempt to portray Plaintiff as unreasonably paranoid, Defendant relies on Plaintiff's deposition testimony wherein Plaintiff explained that he hesitated to refuse an assignment from Christine Lymbar, a dispatcher, because Plaintiff "was afraid that [she] was going to come after him with a knife." (Def.'s Local 56.1 Stmt. ¶ 10.) Defendant neglects to mention, however, that Plaintiff also testified that his fear was based on his claim that Christine Lymbar allegedly "went after another employee with a knife. She was arrested. . . . No write up, no nothing. She was given a free buy." (Pl.'s Dep. at 215.) This allegation is further supported by the deposition testimony of Craig Adolino ("Adolino"), another employee of Defendant, who similarly testified that Christine Lymbar "pulled a knife" on another dispatcher and was thereafter arrested. (Adolino Dep. at 21-22.) A factfinder might

---

[5] Plaintiff explained at his deposition that he sought psychological help because he was caring for both of his ill parents and was under a lot of stress. (*See* Pl.'s Dep. at 117.)

well conclude that the adverse actions alleged by Plaintiff were not all in his head and, if proven true, were sufficient to dissuade him from complaining about Defendant's alleged discriminatory treatment of Garnier. Accordingly, the Court finds that a genuine issue of fact exists as to whether Plaintiff suffered an adverse action as that term has recently been defined by the Supreme Court in *White*.

    **C.**    ***Causal Connection***

Defendant contends that Plaintiff has not presented evidence demonstrating that any of the alleged adverse actions taken by Defendant were somehow linked to Plaintiff's complaints relating to Garnier. Defendant is mistaken.

"Proof of causal connection can be established indirectly by showing that the protected activity was followed closely by discriminatory treatment or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant." *DeCintio v. Westchester Cty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987) (internal citations omitted). Here, as noted above, shortly after Garnier filed his complaint with the New York State Division of Human Rights, Plaintiff allegedly complained to Stairs that Garnier's "human rights were violated" and that Stairs had "to do something." (Pl.'s Dep. at 246.) According to Plaintiff, in response, Stairs screamed at Plaintiff not to complain to the main office and suggested that if he did, he might lose his job. (*Id.*) Plaintiff also testified that Todoro began sending him to dangerous work areas and that Plaintiff expressed concern that someone had tried to break into his van. (Pl.'s Dep. at 310-11.) Todoro responded: "We send you to that area all the time. You see you buddy [Garnier] there? He lives in that hellhole. That's why we send you there all the

time and give you those jobs to do. . . . You belong there. You fit right in with all the people there." (*Id.* at 312.)

From this evidence, a reasonable juror could certainly infer that Defendant began berating and threatening Plaintiff and sending him to dangerous work locations in order to deter him from, and in retaliation for, complaining about Garnier. Accordingly, the Court finds that this evidence is sufficient to raise a genuine issue of material fact as to whether there was a causal connection between the alleged adverse suffered by Plaintiff and Plaintiff's complaints regarding Garnier.

**D.**     ***Conclusion as to Plaintiff's Prima Facie Case of Retaliation***

In sum, the Courts finds that Plaintiff has presented evidence which, if believed by a jury, would establish the last three elements of his prima facie case, to wit, that Defendant was aware that Plaintiff engaged in a protected activity, that Plaintiff suffered an adverse employment action, and that a causal connection exists between the protected activity and the adverse action.[6] Accordingly, to the extent Defendant's motion for summary judgment is based on its argument that Plaintiff fails to proffer sufficient evidence to establish a prima facie case of retaliation, Defendant's motion is denied.

**III.**     ***Defendant's Complaint Procedure***

Defendant also argues that Plaintiff's retaliation claims should be dismissed because Plaintiff did not follow Defendant's complaint procedure. Defendant contends that Plaintiff's complaints to Stairs were "cryptic, ambiguous, and bereft of vital information" (Def.'s

---

[6] Defendant does not dispute that Plaintiff satisfied the first element of his prima facie case, to wit, that he engaged in a protected activity.

Mem. at 13), and that although Plaintiff initially complained to Vicki Phillippi, Defendant's Director of Human Resources, he thereafter refused to cooperate with her.

As discussed above, the Court has already rejected Defendant's contention that Plaintiff's complaints were vague; rather, there is evidence to suggest that Plaintiff complained very specifically about Defendant's alleged unfair treatment of Garnier. Moreover, Defendant's characterization of Plaintiff's response to Phillippi's inquiries as being non-cooperative is flawed. It is undisputed that on April 12, 2004, Phillippi sent Plaintiff a letter noting that it was "extremely difficult to conduct a thorough investigation or to corroborate [Plaintiff's] story without witnesses or written documents." (Def.'s Ex. 9.) By letter dated April 25, 2004, Plaintiff responded that he was "not at liberty to discuss . . . Garnier's federal lawsuit [because it was] a legal matter that is being handled by [Garnier's] legal representatives." (*Id.* Ex. 10 at 1.) Based on this one statement in Plaintiff's two-page letter, Defendant contends that Plaintiff refused to cooperate in its investigation and is therefore deprived of any right to bring a retaliation claim. (*See* Def.'s Mem. at 14.)

Plaintiff's April 25, 2004 letter continues, however, to assert that he has been subject to discrimination and retaliation based upon his complaints of Defendant's treatment of Garnier. (Def.'s Ex. 10 at 1.) He further states that he "personally placed ten to fifteen calls to Don Stairs['s] office [and] left messages with his secretary each time." (*Id.*) Plaintiff eventually spoke with Stairs and "told him of the civil rights violations that have been taken place here against [] Garnier, and the retaliation against [Plaintiff]." (*Id.*) According to Plaintiff, Stairs warned him not to call headquarters yet did nothing to stop the retaliation. (*Id.*) Plaintiff further writes that "[a]ll the retaliation [he] suffered from Todoro resulted in [him] having a nervous

-15-

breakdown." (*Id.* at 2.)

Defendant's claim that Plaintiff refused to cooperate with Phillippi by failing to provide her with the names of witnesses is disingenuous in the face of Plaintiff's letter. Plaintiff explicitly references Stairs, his secretary, and Todoro, three witnesses Phillippi could have contacted in an effort to investigate Plaintiff's claims. Accordingly, the Court rejects Defendant's argument that Plaintiff's retaliation claims should be dismissed due to an alleged failure to follow Defendant's complaint procedure.[7]

## *CONCLUSION*

For all of the above reasons, Defendant's motion for summary judgment is denied. Plaintiff shall advise the Court via letter, to be filed on or before March 9, 2007, whether he intends to pursue his application to disqualify Defendant's counsel.

**SO ORDERED.**

Dated: February 23, 2006
      Central Islip, New York

/s_____
Denis R. Hurley,
United States District Judge

---

[7] Defendant also argues that Plaintiff is not entitled to back pay damages because he found comparable employment at a comparable salary even before he resigned. Plaintiff does not address this argument. The Court declines to address this issue at this juncture. Instead, the parties are directed to fully brief the issue of damages in their trial memoranda which shall be filed in accordance with this Court's Individual Rules prior to the trial on this matter.